**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

O'DELL XAVIER HOLDEN,                                    Case No. 1:14-cv-914

    Plaintiff,

                                       Black, J.

    v.                                                                  Bowman, M.J.

ATOS TECHNICAL SOLUTION,

    Defendant.

**REPORT AND RECOMMENDATION**

### I. Procedural Background

Plaintiff, proceeding *pro se* and *in forma pauperis*, filed an employment discrimination complaint on December 11, 2014. In the EEOC charge attached as an exhibit to his complaint, Plaintiff alleges his former employer terminated him on the basis of his race in violation of Title VII, and further discriminated against him based upon his disability and age in violation of the ADA and ADEA. (Doc. 3-1 at 2). Plaintiff identifies himself as a disabled "White American Indian" who was 55 at the time of the alleged discrimination. Upon initial review of the complaint, the Court granted Plaintiff's motion to proceed *in forma pauperis*, but dismissed all claims against individual supervisors and/or coworkers, as failing to state a claim as a matter of law. (Docs. 4, 16). Based on Plaintiff's *pro se* status, and at Plaintiff's request, the Court attempted to obtain legal assistance on Plaintiff's behalf. Unfortunately, the Court's best attempts to secure counsel on Plaintiff's behalf were not successful, and Plaintiff was informed that he must continue to prosecute his claims on his own. (See Docs. 54, 55, 73, 74).

The record reflects that Plaintiff frequently has been confused about civil procedures that apply to this case, and has filed an unusually large number of motions and other documents, leading to several telephone and in-person conferences[1] with the undersigned magistrate judge.   Many of the documents filed by Plaintiff have been stricken from the record as procedurally improper.  (*See, e.g.*, Docs. 64, 71, 83, Orders striking improperly filed documents).

In an Order filed September 8, 2015, following another lengthy phone conference requested by Plaintiff, the undersigned wrote:

> [I]t is appropriate to state at this juncture in the clearest possible terms that, having chosen to pursue this litigation pro se, Plaintiff MUST comply with all applicable local and federal rules of civil procedure as well as with the orders of this Court.  He will not be excused from compliance based upon his pro se status, nor will he be excused based upon his lack of knowledge of any relevant rule.   "[P]ro se plaintiffs are not automatically entitled to take every case to trial [and]…the lenient treatment generally accorded to pro se litigants has limits."  *See, e.g., Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996)(*citing Jourdan v. Jabe*, 951 F.2d 108, 109-10 (6th Cir. 1991)).  The undersigned has been extremely lenient to date, but given the constraints of limited time and the Court's docket, the Court cannot continue to devote unlimited time to legally frivolous or procedurally improper motions.

(Doc. 76 at 2-3).

The Court's instructions had little effect.  Noting that Plaintiff had continued to file procedurally improper and legally frivolous documents less than two weeks after the Court's lengthy telephone status conference, on September 21, 2015 the Court again admonished Plaintiff in addition to striking his improper documents from the record.  "Plaintiff is further reminded that he remains responsible for complying with all applicable local and federal rules of civil procedure as well as with the orders of this

---

[1]In September 2015, the undersigned directed "all further conferences in this case [to] be conducted by telephone unless otherwise specified by the Court," citing the "limitations of judicial resources."

Court. He will not be excused from compliance based upon his pro se status, nor will he be excused based upon his lack of knowledge of any relevant rule." (Doc. 83 at 2).

The Court's scheduling order required the parties to complete discovery by December 15, 2015, with dispositive motions to be filed by February 1, 2016. (Doc. 21). In compliance with that Order, Defendant Atos IT Solutions & Services, Inc. ("Atos") has filed a motion for summary judgment, accompanied by Proposed Undisputed Facts as required by the Standing Order of the undersigned magistrate judge. (Doc. 91).

Plaintiff initially filed a brief response to Defendant's motion, and later requested an extension of time in which to file a supplemental response. On March 7, 2016, Plaintiff filed what has been construed as a supplemental response in opposition to the pending motion for summary judgment. (*See* Docs. 93, 97). In addition to Plaintiff's two responses, he has file multiple motions: (1) Motion to produce discovery (Doc. 85); (2) Motion for recusal of the undersigned magistrate judge (Doc. 86); (3) motion to compel discovery (Doc. 87); (4) motion to compel compliance with prior court order (Doc. 89); (5) motion to compel production of documents (Doc. 92); (6) motion to establish lies told to court (Doc. 95); (7) affidavit of truth (Doc. 96); and (8) motion for meeting with Judge Bowman (Doc. 98).[2] The Plaintiff's motions are addressed in a separate order filed this same day.

## II. Findings of Fact

1. The Defendant, Atos, provides IT services for clients including on-site desk-side support at client locations and remote IT support from call centers. Plaintiff Holden

---

[2]Defendant has construed Documents 95 "motion to establish lies" and 96 "affidavit of truth" as additional supplemental responses in opposition to Defendant's motion for summary judgment. Even if so construed and even if considered fully despite the procedural impropriety of permitting the pro se Plaintiff to file four separate responses, none of the construed responses would change the outcome of this case.

worked full-time for Atos at its Mason, Ohio call center as a technical support engineer, where he provided remote IT support for Atos's customer, Morgan Stanley.

2.  Holden worked for Atos between November 2009 and April 2014.  Prior to his termination, Holden worked an overnight shift, from 11 p.m. until 8 a.m.

3.  Plaintiff began working the night shift after being involved an incident in May 2012 with another employee, Mr. Carmine Santoro, in which Holden admits telling Santoro "you can take it outside if you want to."  (Holden Dep. at 317-22).  Santoro interpreted the comment as a threat and reported it to Mr. Mark Davis, who viewed it the same way.  (Holden Dep. at 317-322).  As a result, the Company advised Holden that he could transfer to another shift where he would not interact with Santoro, or alternatively, he would be discharged with a severance package.  (*Id.* at 326-329). Holden chose to transfer to the night shift at that time.

4.  Holden complained regularly of discrimination and/or unfair or discriminatory treatment by multiple coworkers and/or supervisors while he was employed at Atos. Employment records document 14 separate internal complaints beginning in November 2009.[3]

5.  In April 2013, Holden filed his first formal EEOC charge.  In that charge, Holden alleged sex and disability discrimination as well as retaliation, involving separate incidents dating back to 2009 between Holden and Ms. Terry Boggs-Blakeman, Mr. Greg Harrison, Ms. Julie Boehle, and Ms. Vickie Barker.  He testified that he intended the 2013 charge additionally to cover alleged incidents of race discrimination involving

---

[3]Holden believed there were more than 14 complaints but he was unable to articulate a specific number. In the absence of any contrary evidence, the undersigned also finds that any discrepancy in the number of complaints is not material to the disposition of the pending motion.

4

Ms. Barker and Mr. Harrison that occurred in 2011 and 2012. (Holden Depo. at 292-295).

6. The EEOC sent Holden a Right-to-Sue Notice on May 2, 2013. Holden consulted with counsel but chose not to file suit because the firm requested a retainer, and because he "was beat down, if you could understand what I'm talking about." (Holden Dep. at 307-308).

7. In late July 2013, Holden suffered a stroke while driving to work for his night shift. He testified that he suffered from post-traumatic stress disorder as a result of his stroke and has difficulty driving if he has to change lanes and when getting on/off exit ramps. (Holden Dep. at 103-106).

8. Holden never returned to work at Atos following his stroke. He initially was placed on medical leave and received short-term disability benefits. His absence was considered to be under the Family Medical Leave Act ("FMLA") through October 9, 2013, at which point his FMLA benefits were exhausted.

9. By letter dated April 3, 2014, Atos informed Holden that it had learned that MetLife had denied his request for long-term disability benefits. The letter, signed by Vicki Barker of Human Resources, stated:

> We have recently been made aware that your claim for Long Term Disability (LTD) with MetLife was denied on February 14, 2014. To date, MetLife has not received any further information that indicates you are unable to work and we have not received any communication from you regarding your return to work. Therefore, I am requesting a face-to-face meeting with you in the Mason office to discuss your return to work. I will have another HR colleague participate in this meeting.
>
> Please contact me via phone or email no later than April 11, 2014 to schedule this· meeting. Please be prepared to provide a couple dates and times that you are available so that I can coordinate with my HR colleague to ensure her availability. My contact information is below.

> If I do not hear from you by April 11, 2014 regarding this request to have a face to face meeting or you do not provide any updated documentation to MetLife or myself that substantiates your need for additional time off, then your failure to meet with me to discuss your return to work will be considered job abandonment. Our records will reflect a voluntary termination.

(Doc. 91-2 at PageID 590).

10. On the same date, April 4, 2014 at 12:48 p.m., Holden sent an email to Ms. Barker clearly stating "I decline a face-to-face meeting with you for many reasons," citing in part Barker's "racial comments to me in past meetings" and his belief she is "prejudiced against me in all decisions made." Holden's email further states that he

> will not allow a team of Atos employees to gang up on me….No Way! I will not meet with you…. Shame on you for attempting to manipulate this situation. This would be considered a forced termination not a voluntary termination. Stop your prejudice against gay white men Ms. Barker.

(Doc. 91-2, PageID 598).

11. Paul Peterson, VP of Human Resources, spoke by telephone with Holden the same day. A follow-up April 4, 2014 email at 2:46 p.m. from Mr. Peterson to Holden acknowledges that Holden informed Atos that Holden was appealing MetLife's denial of his LTD claim, and that he had informed Atos he had provided additional medical documentation to MetLife. However, Peterson restates that MetLife does not share medical information with Atos absent consent, which Holden refused to provide. The email reminds Holden that: (1) Holden's FMLA leave was exhausted; and (2) based on the denial of LTD and absence of medical information, Atos "can only infer" that Holden could return to work. The email references Holden's refusal to meet with Vicki Barker, and offers as an alternative a meeting with Mr. Peterson (whose office was in New York) and/or another local HR representative in Mason, Ohio. The email insists upon a

6

meeting to discuss Holden's return to work or alternatively, to discuss why he cannot return. The email concludes by warning Holden that if he continued to refuse to meet or to supply additional medical information, he was considered to be on an "unprotected leave of absence" that "may" result in his termination. (PageID 594).

12. By email of the same date, time-stamped 4:08 p.m., Holden responded to Peterson, beginning with "This email is a joke." (PageID 595). Holden's email states, in relevant part:

> You do not need to know the details of .. my disability at this time. You only need to know the status of MetLife's Long Term Disability claim. I know the law! Stop fishing for information regarding the status of my health. You only need to know MetLife's decision…. Sending information to MetLife satisfies your demand of me. I will not talk to non qualified people about my health issues. This is a federal law and you must respect HIPAA.… I have sent information to MetLife, I will not provide medical information to Atos. By your own letter, if you choose to terminate me this would be a violation of my rights.

(*Id.*).

13. On April 7, 2014 at 5:08 p.m., Paul Peterson, VP of Human Resources, wrote Holden a final email reiterating Atos's request for information as to whether Holden was claiming a disability that required a reasonable accommodation to return to work, or whether he was claiming he could no longer work. (Doc. 91-2, PageID 593). In relevant part, the email states:

> Atos wants to find out what you need to do your job or if it is not possible for you to return to work. I will ask only relevant questions related to this subject. Depending on how the discussion goes, we may not need any medical documentation to corroborate what you tell us, although we reserve our right to request such information as necessary and appropriate to verity the existence of a disability. If you are claiming a disabililty and requesting some sort of an accommodation or claiming that you are simply unable to work at all, you have an obligation under the law to engage in this process in good faith.

If you are not claiming any sort of a disability then such a meeting is not necessary.  However, in that circumstance, you should report to work immediately.

In summary, please advise me if you are claiming disabled status and that you are unable to work, or need an accommodation to do so, in which case you should schedule a time to meet with me for the interactive process discussed above.  Alternatively, if you are not claiming a disability, please contact me to make arrangements to return to work. If you will not agree to do either, Atos will need to terminate your employment.

(*Id.*).

14.  Plaintiff continued to refuse to meet or to provide additional information to Atos.  In an email response to Peterson time stamped 9:39 p.m. on April 7, Holden states "I will need six weeks to respond to you," and further states "I do not believe you when you state that you[] will only limit your questioning to the terms listed…You have already been hostile with me on the phone.  Your passive/aggressive personality is easily determined.  …Sorry Mr. Peterson, you are not a trustworthy person and I have a reason not [to] believe you."  (Doc. 97-1, PageID 684).  In a similar email responding to Peterson, Plaintiff accused Peterson of being "guilty of harassment and discrimination." He explains that he will not speak to Mr. Peterson because he is "not a qualified health care professional…You are not qualified to make a decision about my health, Your [sic] are not a health care professional.  Please stop this harassment and allow MetLife to do their job.  Stop this insanity!"  (Doc. 91-2, Page ID 593).  Holden testified that he refused to meet because he did not trust anyone at Atos.  (Holden Dep. at 342).

15.  Atos terminated Holden by letter dated April 8, 2014 from Peterson, emailed to Holden at 5:47 p.m.  The letter stated: "We are basing your termination on your

refusal to meet with us or to return to work as explained in my emails." (Doc. 91-2, PageID 610).

16. By email of the same date, at 9:05 p.m., Holden again responded to Peterson, reiterating that:

> I… will not comply with your demand to speak with you because I have a concern over racism, prejudice and being ganged up on in the meeting. I asked for a representative to be present to represent me and protect me if your company were to gang up on me again. You elected not to let me have a representative at the time of the meeting.
>
> The people who have made this decision can explain why the meeting would not be recorded as I also asked.
>
> Good Luck Mr. Peterson on your scare tactics with another employee.
>
> I have the law on my side.

(Doc. 97-1, PageID 683). Plaintiff testified that by a representative to protect him, he meant someone like the sheriff or a marshal. (Doc. 91-2, PageID 547).

17. On April 22, 2014, Holden filed a second EEOC charge. In his 2014 EEOC charge, Holden alleged race, age, and disability discrimination. Plaintiff repeated allegations included in his 2013 charge regarding alleged race discrimination by Ms. Barker and Mr. Harrison, an alleged disability/sexual orientation harassment claim involving Ms. Boggs-Blakeman and Ms. Boehle. (Holden Dep. at 382-86). However, he also added allegations of wrongful termination and included an allegation of discrimination based on his Native American heritage, as well as a claim that he had been denied COBRA benefits. Holden testified that he also intended his 2014 EEOC charge to cover the 2012 incident with Mr. Santoro and Mr. Davis that resulted in his being reassigned to the night shift. (*Id.* at 392-393).

### III.  Analysis

### A.  Summary Judgment Standard

In a motion for summary judgment, a court "must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted).  "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed.R.Civ.P. 56(c))(internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

Although disputed facts are viewed in the light most favorable to the non-moving party, Rule 56 requires a non-movant who asserts that a fact is disputed to support that assertion by "citing to particular parts of materials in the record, including depositions, documents, …, admissions, interrogatory answers, or other materials" and/or by showing that the moving party "cannot produce admissible evidence" to support the allegedly undisputed fact.  Rule 56(c)(1), Fed. R. Civ. P.  If a party fails to properly address another party's assertion of fact, then the court may "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."  Rule 56(e)(2) and (3).

Similar to and consistent with Rule 56, the Standing Order of the undersigned requires any party who denies disputed proposed findings of fact to submit a formal response to the proposed findings.

> If denied, the denial must be supported with a citation to contrary evidence that would be admissible at trial and such evidence must be filed and served with the Response to Proposed Undisputed Facts. The Response must also include, in a separate section entitled "Disputed Issues of Material Fact," a list of each issue of material fact the opponent contends must be tried.

Standing Order at ¶I.E(3)(b).

Other than expressing general disagreement, Plaintiff Holden has failed to comply with Rule 56 or with the Standing Order by citing to <u>any</u> "particular" evidence of record to dispute any specific fact set forth by the Defendant. By contrast, the Defendant has provided ample citations to the record to support its proposed facts.

### B. Plaintiff's Failure to Provide Any Substantive Response

In addition to failing to properly dispute any genuine issues of material fact, Holden offers no substantive response to Defendant's numerous meritorious legal arguments. In his first "response," Holden argues that Atos has provided "incorrect information… in the summary judgment. Documents have been provided that will prove Atos has lied in this summary judgment. Documents will be again provided if requested." (Doc. 93 at 1). Holden requests "a meeting with Judge to address my issues." (*Id.* at 2).

Holden's construed supplemental response in opposition to Defendant's motion, (Doc. 97), also fails to provide substantive arguments. In his supplemental response, Plaintiff urges this Court to deny summary judgment because he believes that Atos "originally stated that they wanted to settle out of court." (*Id.* at 1). Plaintiff has attached

11

15 documents as exhibits to this supplemental response, which – without any direct citation - he argues support his "affidavit of truth" and provide grounds for denying summary judgment to the Defendants. (Doc. 97-1 at 1).

Plaintiff has been repeatedly counseled and advised that he must comply with all relevant local and federal rules of civil procedure. In order to overcome a well-supported motion for summary judgment, Rule 56 requires a substantive response to show genuine issue of disputed fact and/or that Defendant is not entitled to judgment as a matter of law on the grounds asserted.

Where, as here, the Defendant has supported its proposed undisputed facts with detailed citation to record evidence, the opposing party may not simply refer to unspecified "documents" in the record that he believes present some issue for trial. Rather, he must cite to record evidence. Despite his inclusion of fifteen documents attached as general exhibits to his supplemental response in opposition to Defendant's motion, (Doc. 93), Plaintiff has failed to demonstrate the existence of any *genuine* issue of *material* fact. Considering Plaintiff's pro se status, and notwithstanding Plaintiff's repeated failure to provide any specific citations to the record, the undersigned has closely reviewed the 15 documents attached to his supplemental response. Many of those documents are irrelevant and/or refer to time-barred claims. The few relevant documents fail to reveal any genuine issue of material fact.

As has been evident throughout this case, Plaintiff fails to appreciate the legal grounds (including but not limited to statute of limitations defenses) that entitle the Defendant to judgment as a matter of law. Regardless of how unfairly Plaintiff believes

he was treated during his employment with Atos, the Defendant is entitled to judgment as a matter of law on the few claims that are not time-barred.

### C. Defendant is Entitled to Summary Judgment

### 1. Claims Arising Out of the 2013 EEOC Charge Are Time-Barred

The EEOC dismissed Holden's 2013 charge on May 2, 2013 and issued a Right-to-Sue Notice the same date, informing Holden that he had only 90 days to file suit, a time period that expired on or about July 31, 2013.   Holden admits receipt of that notice but chose not to file until December 11, 2014.  Therefore, Holden's allegations of race discrimination by Mr. Harrison and Ms. Barker; allegations of discrimination based on sex or sexual orientation[4] by Ms. Boggs-Blakeman, and allegations of disability harassment by Ms. Boehle, and related retaliation claims, are all time-barred.  Holden's allegations of race discrimination by Mr. Harrison and Ms. Barker in 2011 and 2012 are similarly time-barred to the extent that Holden testified they were to be included in his 2013 Charge.

To the extent that any reviewing court may not consider the 2011 and 2012 allegations to have been adequately presented in Holden's 2013 Charge, but instead to have been included for the first time in the 2014 EEOC Charge, those 2011 and 2012 race discrimination claims are still time-barred.  A claimant must file his EEOC charge within 300 days of the alleged discrimination.  42 U.S.C. §2000e-5(e)(1).

### 2. Restated Claims Remain Time-Barred

Holden restates many, if not all, of his 2013 claims in his 2014 EEOC charge. However, a claimant cannot circumvent Title VII's 90-day filing deadline simply by

---

[4]Under current law, Title VII does not prohibit discrimination based upon sexual orientation. *See Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 762 (6th Cir. 2006).

refiling the same allegations in a new Charge. *See Hananiya v. City of Memphis,* 356 F. Supp.2d 871 (W.D. Tenn. 2005); *Adams v. Tennessee Dept. of Finance and Admin.,* 2004 WL 5187632 (M.D. Tenn., May 20, 2005). *citing Williams v. Little Rock Mun. Water Works,* 21 F.3d 218, 222 (8th Cir. 1994); *see also Washington v. City of Gulfport, Miss.*, 351 Fed. Appx. 916, 918 (5th Cir. 2009).

### 3. New 2014 Termination Claim Without Merit

Holden's primary claim in his 2014 Charge is that Atos failed to accommodate his alleged disability and unfairly terminated him. To prove a failure to accommodate claim, Plaintiff must show through direct evidence that: (1) he is disabled under the ADA; (2) he is otherwise qualified to perform the position with or without reasonable accommodation; (3) Atos was aware of his disability; (4) he requested an accommodation; and (5) Atos failed to provide the necessary accommodation. *See Day v. National Elec. Contractors Assoc.,* 91 F. Supp.3d 1008, 1015 (S.D. Ohio, March 18, 2015); *Gerton v. Verizon South Inc.*, 145 Fed. Appx. 159, 164 (6th Cir. 2005).

On the undisputed facts presented, the Defendant is entitled to judgment as a matter of law on Plaintiff's failure to accommodate claim because Holden admits he was incapable of returning to work. He testified that he has only recently improved enough to begin to prepare for part-time employment, but had not yet applied anywhere. (Holden Dep. at 118, Doc. 91-2, PageID 497). Therefore, Holden was not "otherwise qualified" to perform his job. "An employer will be entitled to judgment if a Plaintiff fails to establish that he requested and was denied a reasonable accommodation, as the employer has no duty to provide a reasonable accommodation absent such a request. *Kovac v. Superior Dairy, Inc.*, 998 F. Supp.2d 609, 619 (N.D. Ohio 2014).

If an employee is disabled and seeks an accommodation, the ADA requires the employee to inform the employer of the disability and propose a reasonable accommodation for it.    It is Plaintiff's burden to show that he proposed an accommodation that was reasonable.  *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010)(citation omitted).    "The employer has no duty to provide a reasonable accommodation until plaintiff requests [the] same."  *Kovac*, 998 F. Supp.2d at 619, citing *Breitfelder v. Leis*, 151 Fed. Appx. 379, 386 (6th Cir. 2005); *see also Grant v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046-47 (6th Cir. 1998)("The employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation.").

To the extent that Holden relies on the same direct evidence for his closely related termination claim, Atos remains entitled to judgment because Holden was not "otherwise qualified."  To prove his wrongful termination claim, Plaintiff is still required to show (1) he is disabled; (2) he is "otherwise qualified" for the position despite his disability; (a) either without accommodation; or (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation.  Only if Holden had made that preliminary showing would Atos have needed to show that (3) a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation would impose an undue hardship. *Day*, 91 F. Supp.3d at 1015 (additional citation omitted).    While it is possible to prove a discriminatory termination claim through indirect evidence, Plaintiff must <u>still</u> establish that he is "otherwise qualified, with or without reasonable accommodation" even under that

alternative evidentiary approach.  *See Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 453 (6th Cir. 2004)(additional quotation omitted).

Holden is required to prove that Atos terminated him "on the basis of" his disability.  *See* 42 U.S.C. §12112(a); *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012).  However, Holden testified that he could not work full-time, even at the time of his deposition, and was uncertain whether he could work even part-time.  (Holden Dep. at 127, "I have to become more stable.").  He testified he could not interact with the public, and that he could not work or drive at night.  (*Id.*).  With the restrictions to which he testified, Holden could not possibly perform his full-time position at Atos, which required working an overnight shift and daily interaction with the public. *See, e.g. Gatlin v. East Tennessee Children's Hosp.*, 76 F. Supp.2d 839, 845 (E.D. Tenn. 1998), citing *Smith v. Americtech*, 129 F.3d 857 (6th Cir. 1997)(holding that an employer has no duty under the ADA to keep a disabled employee's position open indefinitely, noting that "an employee who does not come to work cannot perform any of his job functions").

Holden refused to return to work after his short-term disability benefits and FMLA leave expired.  If an employee <u>refuses</u> to return to work, he is considered to be unqualified "to perform any of his job functions, essential or otherwise," and therefore is not "otherwise qualified" for the job.  *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 761 (6th Cir. 2015).  While it is true that under some circumstances, an additional period of leave might be considered a "reasonable" accommodation, the record in this case reflects that Atos already had provided Holden with six months of leave after his FMLA leave

16

benefits expired, but that Holden continued to refuse to return to work, to meet with Atos, or to provide any additional information concerning his status.

Holden specifically refused to meet with Atos in order to discuss a return date, or to confirm that he was disabled and could work with any reasonable accommodation. The record unequivocally demonstrates that it was Holden's refusal to participate in a meeting with Atos, to discuss his return to work either with or without any requested accommodations, that directly led to his termination.   An employer cannot be held liable when an employee refuses to meet or to provide information about whether he is claiming disabled status, and if so, whether he could return to work with any reasonable accommodation.   Holden failed to meet his own obligation to meet with Atos and/or to provide Atos with additional information.  *Jakubowski*, 627 F.3d at 202.   Holden's reasons for refusing to meet with Peterson (because he was not a "healthcare professional," and because Holden did not trust anyone at Atos) do not excuse Holden's legal obligation or preclude Atos from terminating him.   Atos acted reasonably in rejecting Holden's numerous conditions for the meeting.  It is clear that Holden believed that Atos's requests were unlawful and an unreasonable intrusion into his private life. They were not.

Even if Atos should have assumed that Holden was continuing to claim a disability based upon his statement that he was appealing MetLife's denial of his LTD claim,[5] Holden still failed in his legal duty to propose reasonable accommodations.  Atos simply cannot be held liable for failing to accommodate Holden when no accommodations were ever requested.  *See Lockard v. General Motors Corp.*, 52 Fed.

---

[5]Although that appeal does not bear directly on Holden's claims herein, an August 2014 letter attached  to Plaintiff's complaint, states that he is "now collecting Long Term Disability from my health [c]are insurance provider." (doc. 3-1, PageID 38).

17

Appx. 782, 787-788 (6th Cir. 2002)(explaining that an appropriate reasonable accommodation "is best determined through a flexible, interactive process" involving both employer and the employee with a disability).  Atos was not legally bound to wait indefinitely for Holden's return.  *See Cash v. Siegel-Robert, Inc.*, 548 Fed. Appx. 330, 335-336 (6th Cir. 2013)(holding that employer was justified in discharging employee after his medical leave expired, where employee failed to ask for further leave, which signaled the employer that the employee did not intend to return).

### 4.  Alternative Discrimination Claims Also Without Merit

Holden's 2014 Charge includes general allegations of discrimination as a "White American Indian."  To prevail on this claim, Holden must show that he belongs to a protected group, and that he faced discrimination based upon membership in that protected group.  *See Williams v. CSX Tranp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011). Holden has alleged that he is one-eighth or one-twelfth Cherokee or Native American.[6] In a circumstance as that alleged here, in which Holden's membership in a protected group was not readily apparent, a plaintiff must prove that his antagonists actually knew of his protected status.  *See Prebilich-Holland v. Gaylord Entm't Co.*, 297 F.3d 438, 444 (6th Cir. 2002); *see also Mohammad v. J.P. Morgan Chase Nat. Corp. Services, Inc.*, 2013 WL 5786016 (S.D. Ohio, Oct. 28, 2013).  It is difficult to conceive of how an employer's conduct could be discriminatory based upon a protected status of which the employer was wholly unaware.  Here, Holden testified that, with the exception of one person who left Atos and a woman he once rode an elevator with (neither of whom were

---

[6]In a "motion to establish lies told to court by Atos," liberally construed by Defendant as one of four responses to the pending motion, Holden argues that he can prove from his genealogy that he is one-eighth Cherokee.  (Doc. 95).  Neither Defendant nor this Court challenge Holden's lineage for purposes of the pending motion.

involved in any alleged discriminatory conduct), his coworkers were unaware that he was Native American. (Holden Dep. at 388). Additionally, Holden seemed to admit in his deposition that he was no longer claiming discrimination on this basis. *Id.*[7] Thus, Defendant is entitled to judgment as a matter of law on any claim based upon Holden's Native American heritage.

Holden's 2014 Charge also includes an allegation of age discrimination, to the extent that the "age" discrimination box was checked on the form. However, the 2014 Charge includes no facts or allegations relating to any claim of age discrimination, nor does Holden's complaint in this Court. Holden also testified that none of his allegations relate to his age. (Holden Dep. at 390-392). Accordingly, Defendant is entitled to judgment as a matter of law on any claim of age discrimination.

Holden's 2014 Charge alleges that Atos discriminated against him when it denied him COBRA benefits. However, he testified at his deposition that Atos sent him a timely COBRA notice. (Holden Dep. at 376). Therefore, Defendant is entitled to judgment as a matter of law concerning any COBRA claim.

Finally, Holden's 2014 Charge includes allegations relating to the Davis/Santoro incident, which occurred on or about May 2012 Allegations regarding that claim are clearly time-barred, since Holden failed to include the claim in his 2013 Charge, and the alleged incident occurred far more than 300 days prior to the filing of the 2014 EEOC Charge. *See generally Van Buren v. Ohio Dep't of Pub. Safety*, 996 F. Supp.2d 648, 659 (S.D. Ohio 2014).

---

[7]Plaintiff clarified that his primary "race discrimination" claim was "reverse discrimination black on white." (Dep. at 388). However, for the reasons previously discussed, any such claim is time-barred.

**IV.  Conclusion and Recommendation**

Accordingly, **IT IS RECOMMENDED THAT** Defendant's motion for summary judgment (Doc. 91) be **GRANTED**, and that this case be dismissed with prejudice and closed.

        *s/ Stephanie K. Bowman*
        Stephanie K. Bowman
        United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

O'DELL XAVIER HOLDEN,                                              Case No. 1:14-cv-914

     Plaintiff,

                                              Black, J.

     v.                                                                  Bowman, M.J.

ATOS TECHNICAL SOLUTION,

     Defendant.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).