UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

O'DELL XAVIER HOLDEN,     :   Case No. 1:14-cv-914
             :
   Plaintiff,       :   Judge Timothy S. Black
             :   Magistrate Judge Stephanie K. Bowman
vs.            :
             :
ATOS TECHNICAL SOLUTION,    :
             :
   Defendant.       :

**DECISION AND ENTRY
ADOPTING THE REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE (Doc. 100);
OVERRULING PLAINTIFF'S OBJECTIONS (Doc. 102);
DENYING PLAINTIFF'S MOTION TO ACCESS (Doc. 104);
AND TERMINATING THIS CIVIL ACTION**

This civil action is before the Court pursuant to the Order of General Reference in

the United States District Court for the Southern District of Ohio Western Division to

United States Magistrate Judge Stephanie K. Bowman. Pursuant to such reference, the

Magistrate Judge reviewed the pleadings filed with this Court, and, on April 12, 2016,

submitted a Report and Recommendation that Defendant's motion for summary judgment

be granted and that this case be dismissed with prejudice and closed. (Doc. 100). The

Magistrate Judge entered an accompanying Order denying Plaintiff's non-dispositive

motions. (Doc. 101).

Plaintiff timely filed objections (Doc. 102), and Defendant filed a response thereto (Doc. 103).[1] Subsequently, Plaintiff filed a motion to access all motions that were previously stricken from the docket by the Magistrate Judge. (Doc. 104). The Court addresses these filings in turn.

### A. Report and Recommendation (Doc. 100)

With respect to the Report and Recommendation, the Court has reviewed the comprehensive findings of the Magistrate Judge and considers *de novo* all of the filings in this matter, as required by 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b). For the reasons set forth in the Report and Recommendation, the Court agrees that Defendant is entitled to judgment as a matter of law.

Plaintiff's objections do not identify any genuine issues of material fact. Instead, Plaintiff largely restates his claims, which were fully addressed in the Report and Recommendation. Notwithstanding Plaintiff's belief to the contrary, a number of Plaintiff's claims are time barred.[2] The Court addresses objections with respect to Plaintiff's remaining claims below.

---

[1] While Plaintiff's objections are styled as objections to the Report and Recommendation (only), Plaintiff also objects to matters addressed in the Magistrate Judge's accompanying Order.

[2] Plaintiff avers that his claims were timely filed and that, if they were not, the EEOC would not have issued a right to sue letter. For the reasons set forth in the Report and Recommendation, Plaintiff's arguments fail. (*See* Doc. 100 at 13–14, 19). To the extent that Plaintiff argues that the Magistrate Judge misstated facts related to the incidents underlying these time-barred claims, the alleged discrepancies are not material, because they do not tend to show that the claims were timely filed. For the same reason, the following documents, which are attached to Plaintiff's objections, do not raise any genuine issue of material fact: an e-mail exchange between Plaintiff and Vicki Barker (Doc. 102 at 21–28); interrogatories directed to Jason Walker (*id.* at 29–31); and interrogatories directed to Josh Rader (*id.* at 32–34).

*1.    Failure to Accommodate Claim*

Plaintiff clarifies that the claimed "failure to accommodate" pertains to Defendant's failure to give MetLife enough time to complete its investigation of Plaintiff's request for long term disability (LTD) benefits. (Doc. 102 at 11). Plaintiff notes that he had provided additional medical information to MetLife, which eventually awarded him LTD benefits. (*Id.*)

As an initial matter, Plaintiff ignores the fact that Defendant notified him that it could not access any additional medical information provided to MetLife because Plaintiff had failed to give the consent required for such a disclosure.[3] In any event, Plaintiff's request for additional leave, such that MetLife would have time to reconsider its decision with respect to Plaintiff's LTD benefits, is not a request for a reasonable accommodation. *See Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010) ("[T]he plaintiff has the burden of proving that he will be 'capable of performing the essential functions of the job with the proposed accommodation.'") (citation omitted). There is no evidence that such a period of additional leave would have facilitated Plaintiff's return to work.[4]

_____

[3] Plaintiff claims, without citation to any evidence, that Defendant "refused to contact MetLife timely" with respect to Plaintiff's LTD benefits. (Doc. 102 at 11). Barker initially suggested that Plaintiff could provide relevant medical information to MetLife, as an alternative to sending it to Defendant. (Doc. 91-2 at 130). However, Peterson subsequently notified Plaintiff that Defendant was unable to access any of the information he provided to MetLife because Plaintiff had not given consent for MetLife to share his medical information with Defendant. (*See* Doc. 91-2 at 134).

[4] In fact, at his deposition, Plaintiff testified that he had only recently improved enough to begin to prepare for part-time employment, but had not yet applied anywhere. (Doc. 91-2 at 118).

2.     *Wrongful Termination Claim*

Plaintiff objects to the Magistrate Judge's characterization of his actions as a refusal to meet with Defendant. (Doc. 102 at 12). Plaintiff explains that he simply conditioned any such a meeting on the presence of a witness (*i.e.* a sheriff or a marshal) or the recording of the meeting, because he feared retaliation and further discrimination. (*Id.*) For the reasons set forth in the Report and Recommendation, and reproduced in part below, the distinction Plaintiff seeks to draw does not save his claim:

> An employer cannot be held liable when an employee refuses to meet or to provide information about whether he is claiming disabled status, and if so, whether he could return to work with any reasonable accommodation. Holden failed to meet his own obligation to meet with Atos and/or to provide Atos with additional information. *Jakubowski*, 627 F.3d at 202. <u>Holden's reasons for refusing to meet with Peterson (because he was not a "healthcare professional," and because Holden did not trust anyone at Atos) do not excuse Holden's legal obligation or preclude Atos from terminating him. Atos acted reasonably in rejecting Holden's numerous conditions for the meeting. It is clear that Holden believed that Atos's requests were unlawful and an unreasonable intrusion into his private life. They were not.</u>

(Doc. 100 at 17) (emphasis added). Here, Defendant provided Plaintiff with six months of leave *after* his FMLA leave expired. Put simply, Defendant was entitled to information about Plaintiff's condition, and, having received none, was permitted to terminate Plaintiff.

---

Plaintiff seems to suggest that MetLife's decision to ultimately grant his LTD benefits vindicates his position with respect to his claims in this case. It does not—Defendant extended Plaintiff's leave well beyond what was required under the law. *See* Section A.2, *infra*.

### 3.    Race Discrimination Claim

Construing Plaintiff's objections broadly, Plaintiff claims that Defendant was aware of his Native American heritage because Gregg Harrison overheard a conversation between Plaintiff and a coworker. (Doc. 102 at 13).[5] Plaintiff also implies that others were aware of his race because of his appearance. (*Id.*) However, to prevail on his claim, Holden must show that he belongs to a protected group, and that he faced discrimination based upon membership in that protected group. *See Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011). Critically, Plaintiff does not identify any evidence which would tend to show that he was discriminated against based on his Native American heritage.[6]

### 4.    Discrimination Claim Related to Denial of COBRA Benefits

Finally, Plaintiff asserts that he had to wait over two months to receive COBRA benefits. (Doc. 102 at 13). However, Plaintiff admitted that he received his COBRA notice timely, within a month of his termination. (*See* Doc. 91-2 at 90). Accordingly, Plaintiff's claim that Defendant discriminated against him with respect to his COBRA benefits is not well taken.

---

[5] Plaintiff makes this claim notwithstanding his admissions at his deposition that: (1) only two colleagues (neither of whom were involved in any alleged discriminatory conduct) were aware of his Native American heritage; and (2) his primary race discrimination claim was "reverse discrimination black on white." (Doc. 91-2 at 97).

[6] Because Plaintiff does not specifically identify any acts of discrimination that are allegedly attributable to his Native American heritage, the Court cannot assess whether any such claims are time barred.

For the foregoing reasons, the Court determines that the Magistrate Judge's Report and Recommendation should be and is hereby **ADOPTED** in its entirety; and Plaintiff's objections to the Report and Recommendation are **OVERRULED**.[7]

### B.  Order (Doc. 101)

Plaintiff also objects to the Magistrate Judge's Order, which addresses non-dispositive matters.  Accordingly, the Court applies the "clearly erroneous" and "contrary to law" standards of review set forth in Federal Rule of Civil Procedure 72(a).[8]

Plaintiff alleges that the Magistrate Judge was not acting fairly and impartially when she struck Plaintiff's motions regarding "lies told" by defense counsel to the Court and to the EEOC.  (Doc. 102 at 4).  Plaintiff characterizes the Magistrate Judge's behavior as increasingly "aggressive and hostile" toward him and suggests that the Magistrate Judge and defense counsel were colluding.  (*Id.* at 5).  In support of this latter claim, Plaintiff asserts that the Magistrate Judge refused to grant his motion to compel, even though she had already ordered production of the documents at issue.  (*Id.*)

The Court finds Plaintiff's allegations to be unsupported and without merit.  The record shows that the Magistrate Judge warned Plaintiff multiple times that procedurally

---

[7] Plaintiff claims that the Magistrate Judge was not fair or impartial in granting summary judgment in favor of Defendant.  (Doc. 102 at 9).  Because this Court reaches the same conclusion as the Magistrate Judge, it finds that Plaintiff's argument is not well taken.

[8] A Magistrate Judge's factual finding is "clearly erroneous" only when, after reviewing the evidence, the Court "is left with the definite and firm conviction that a mistake has been committed."  *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948); *Adams County Reg'l Water Dist. v. Vill. of Manchester*, 226 F.3d 513, 517 (6th Cir. 2000).  A court will overturn a Magistrate Judge's legal conclusions only where those conclusions "contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent."  *Gandee v. Glaser*, 785 F.Supp. 684, 686 (S.D. Ohio 1992).

improper and frivolous filings would be stricken. (*See, e.g.*, Docs. 76, 83). Plaintiff

failed to heed such warnings, and the Magistrate Judge's decision to strike such motions

was not contrary to law.

With respect to Plaintiff's motion to compel, the Magistrate Judge ultimately

concluded as follows:

> [N]o discovery violations have been committed by Defendant, and . . .
> Defendant has adequately complied with all prior orders regarding
> discovery. Additionally, for the reasons expressed in the R&R
> accompanying this Order, no amount of additional discovery could
> preclude judgment being awarded to Defendant as a matter of law.

(Doc. 101). Plaintiff has not demonstrated that this conclusion was contrary to law,

especially in light of defense counsel's explanation as to why the e-mail communications

at issue could not be produced, even though such production had been previously

ordered:

> Atos could not produce messages from Ms. Barker's account between her
> and MetLife because Ms. Barker communicated with MetLife via
> MetLife's secure messaging system, and these messages have since
> expired. Nonetheless, in order to comply with the Court's Order, Atos
> requested from MetLife any messages between MetLife and Ms. Barker
> regarding the Plaintiff. MetLife informed Atos that it could not produce
> these documents without Plaintiff's authorization. MetLife advised Atos
> that Plaintiff had failed to return his authorization form to MetLife when he
> was an Atos employee. (See email correspondence between Atos and
> MetLife, Ex. A). MetLife instructed Atos that it would require a subpoena
> to produce these documents. (*Id.*). Atos then informed Plaintiff of this
> result.

(Doc. 90 at 2). Accordingly, the Magistrate Judge's conclusion that Defendant

had adequately complied with prior discovery orders is well supported.

7

Plaintiff also alleges that he filed a motion to the Magistrate Judge's "superior" asking that the Magistrate Judge be removed from the case and replaced with a different judge, and that the Magistrate Judge improperly construed this motion as one for recusal. (Doc. 102 at 5).[9]  This Court would have resolved the motion in the same manner as the Magistrate Judge.

Recusal is only warranted where a "reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality." *See Hughes v. United States*, 899 F.2d 1495, 1501 (6th Cir. 1990).  This is an objective standard and it is not based "on the subjective view of a party." *Browning v. Foltz*, 837 F.2d 276, 279 (6th Cir. 1988).  "A bias sufficient to justify recusal must be a personal bias 'as distinguished from a judicial one,' arising 'out of the judge's background and association' and not from the 'judge's view of the law.'" *Id.* (quoting *United States v. Story*, 716 F.2d 1088, 1090 (6th Cir. 1983)) (emphasis added).

Here, Plaintiff's allegations of bias relate to the Magistrate Judge's conclusions in the case based on her view of the law.  Moreover, Plaintiff's subjective speculation that the Magistrate Judge and defense counsel had "colluded" is insufficient to support his allegation of judicial bias. *See Smith v. Caterpillar, Inc.*, 304 F. App'x 391, 396 (citing *Hughes*, 899 F.2d at 1501 (6th Cir. 1990)).

---

[9] The Court does not believe the Magistrate Judge improperly construed the motion.  The motion was not addressed to any specific judicial officer. (*See* Doc. 86).  Further, the Magistrate Judge was tasked with resolving all motions filed in the case pursuant to the Order of General Reference.

For the foregoing reasons, Plaintiff's objections to the Magistrate Judge's Order are **OVERRULED**.[10]

### C.  Motion to Access (Doc. 104)

Plaintiff moves to access all motions that have been stricken from docket by the Magistrate Judge.  (Doc. 104).  Plaintiff explains that he intends to use these motions in a charge of judicial misconduct against the Magistrate Judge.  (*Id.*)

To the extent Plaintiff asks the Court to include his previously-stricken motions on the public docket, his request is essentially an objection to the orders striking these motions in the first instance.  (Docs. 64, 71, 83).  Such an objection is not timely.  *See* Fed. R. Civ. P. 72(a) ("A party may serve and file objections to the order within 14 days after being served with a copy.").[11]  To the extent Plaintiff asks the Court to provide him with copies of these previously-stricken motions, he provides no authority in support of his request, nor is the Court aware of any.  Because these motions were stricken, they are no longer part of the Court's official record of the case.  Further, because Plaintiff submitted these filings, he is already aware of the information contained therein.

_____

[10] Plaintiff claims that he was waiting to file his own dispositive motion until he received rulings on his other motions, and, therefore, seeks an extension of time to file a dispositive motion. (Doc. 102 at 6).  Because the Court finds that Defendant's motion for summary judgment is well taken, Plaintiff's request is denied as moot.

[11] To the extent Plaintiff's instant motion is more appropriately construed as a motion for reconsideration, courts find justification for reconsidering interlocutory orders only when there is: (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice. *See Rodriguez v. Term. Laborers Health & Welfare Fund,* 89 F. App'x 949, 959 (6th Cir. 2004) (citation omitted).  Only the third justification is relevant here.  Because Plaintiff's filings were procedurally improper and/or frivolous, there is no clear error or manifest injustice that needs to be corrected.

Accordingly:

1. The Report and Recommendation (Doc. 100) is **ADOPTED**;

2. Plaintiff's Objections (Doc. 102) to the Magistrate Judge's Report and Recommendation (Doc. 100) and Order (Doc. 101) are **OVERRULED**;

3. Defendant's motion for summary judgment (Doc. 91) is **GRANTED**;

4. Plaintiff's motion to access (Doc. 104) is **DENIED**; and

5. This case is **DISMISSED** with prejudice and **TERMINATED** from the docket of this Court.

**IT IS SO ORDERED**.

Date:  6/13/16

Timothy S. Black
United States District Judge

10